CHARLES A. GILBERT *v.* ADAM C. HOLLINGER—JOSEPH KREBS *v.* the same.

Where the Federal Court was resorted to on a false allegation of the citizenship of the parties, in order to obtain possession of property by attachment, and the proceedings were then dismissed and simultaneously process of attachment sued out from a State Court, on the affidavit that the defendant in the attachment, who was represented in the Federal Court to be a citizen of Louisiana, was a non-resident—*Held:* That the allegation of the non-residence of the defendant being at direct variance with the allegation previously made by the same party in the Federal Court, the attachment could not be maintained.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*Clark & Bayne*, for plaintiff. *R. & H. Marr*, for defendant.

COLE, J. These two cases were tried together in the court below. Two appeals have been taken from the judgments rendered, which have come up in separate transcripts; those numbered 4735, being an appeal of an intervenor and third opponent, *Perrin*, who claims the slaves attached in this case, as his property, and not that of defendant; and the case numbered 4825, being an appeal of the defendant.

Both these suits were commenced by attachment; the affidavit and petition in each case, alledging the defendant to be a non-resident of this State. No personal service of citation was made upon defendant in either case. A curator *ad hoc* was appointed to represent him. He is, therefore, only in court by his property attached; and, as a rule has been taken by the curator *ad hoc* in each case, to dissolve the attachment, it is incumbent upon us, first, to examine the issue made by the rule. For if the attachment be dissolved, the suit with its accessory, the third opposition, must fall.

The rules to dissolve the attachment are based upon several grounds, of which the second has alone been insisted upon in argument in this court. It is identical in both rules, and is as follows :

" Because the negroes attached were illegally and tortiously brought within the jurisdiction of this honorable court, at the instance of the said *Charles A. Gilbert*, and by his contrivance and procurement for the purpose of being attached

56

in the present suit, or in a suit to be instituted in some one of the district courts of New Orleans, by the said *Charles A. Gilbert*, for the same cause. That said negroes were at or near Pass Manchac, in the parish of St. John the Baptist, on the New Orleans, Jackson and Great Western Railroad, where they had been hired for several months past, and where they were attached and seized, and whence they were brought to the city of New Orleans, by a Deputy Marshal of the United States, in virtue of a writ of attachment issued on the 6th day of June, 1854, from the Clerk's office of the Circuit Court of the United States, holding sessions at the city of New Orleans, which said writ was issued at the suit of *Charles A. Gilbert* v. *Adam C. Hollinger*, in said Circuit Court, filed on the 6th day of June, 1854, and was served at night, at or near Pass Manchac, between the 7th and the 8th day of June, 1854. That said Circuit Court was entirely without jurisdiction in said suit, and had no authority to grant said writ. That said Circuit Court can take jurisdiction in civil matters only where the suit is between citizens of different States, one of them being a citizen of the State in which said Circuit Court is held ; and that said *Hollinger* and said *Gilbert* were, at the time said suit was brought in said Circuit Court, and are now citizens of the State of Alabama, residing in Mobile county in said State, which fact was well known to the said *Charles A. Gilbert* and to *James C. Bolling*, who, acting as agent for said *Gilbert*, caused said suit to be instituted, and upon whose affidavit the said attachment was issued. That in his petition, in said suit, it was charged that said *Charles A. Gilbert* was a citizen of the State of Alabama, and that *Adam C. Hollinger* was a citizen of Louisiana, which latter allegation was untrue, and was made for the purpose of giving colorable jurisdiction to said Circuit Court. That the writ of attachment issued from said Circuit Court, on the affidivit that said *Hollinger* concealed himself to avoid being cited and forced to answer said suit, which was also untrue ; that all said proceedings in said Circuit Court were illegal and void, for want of truth of the material allegations, and for want of jurisdiction ; and that the seizure of said negroes, and the bringing of them to the city of New Orleans, was a trespass."

" That on the 22d of June, 1854, the said *Gilbert* voluntarily discontinued said suit, and dismissed said attachment in said Circuit Court, and immediately brought the present suit in this honorable court, and caused the writ of attachment to issue herein, by virtue of which the said negroes were seized by the Sheriff of the parish of Orleans, while they were still in the custody of the Marshal ; all which actings and doings were and are illegal and tortious, and were done for the purpose of giving to this court a jurisdiction which it had not, either by reason of the residence of the said *Hollinger*, or of the *situs* of the said negroes previous to the said illegal attachment and seizure by the said Marshal."

The facts stated in the above ground, separate from what may be considered as argumentative, or declamatory, are proved by documentary and record evidence, by the testimony of witnesses, and by admissions of parties on the trial of the rule.

On the 6th of June, 1854, the plaintiffs, *Charles A. Gilbert* and *Joseph Krebs*, filed their petitions separately in the Circuit Court of the United States for the Eastern District of Louisiana, for attachments of the property of defendant, *Adam C. Hollinger*, for the recovery of the same debts which are the object of the present actions. In the petitions to the United States Court, the plaintiffs allege themselves to be citizens of Alabama, and defendant to be a citizen of the State of Louisiana, and a resident of the said State, and within the jurisdiction

of the said United States Court. They further allege, that *Hollinger* conceals himself to avoid being cited, and has property within the jurisdiction of the court. The affidavits at the foot of these petitions are made by *James C. Bolling*, as agent of the plaintiffs, who swears to the debt, in each instance, and also that *Adam C. Hollinger* conceals himself to avoid being cited, and forced to answer the suit intended to be brought against him.

Writs of attachments issued in both cases, which were executed by levying upon certain slaves. These suits were both discontinued on the 22d of June, 1854, on motion of the council of plaintiffs.

On the same day (22d of June, 1854,) the present suits were commenced by the filing of affidavits for attachments in the Second District Court of New Orleans.

The affidavit in *Gilbert's* case is made by the plaintiff himself; and in *Kreb's* case, by *James C. Bolling*, as the agent of *Krebs*. Both affiants swear to the amount of the debt in their respective suits claimed; and that *Adam C. Hollinger* resides out of the State of Louisiana.

The petitions filed the next day in each case also set forth that *Hollinger* resides out of the State of Louisiana.

It is proved that *Hollinger* has been a resident of Mobile county, Alabama, for twenty-two years past; that *James C. Bolling* was the specially authorized agent of *Gilbert & Krebs*, for prosecuting their claims, with power to sign attachment and other bonds; that *Bolling's* father and *Hollinger* are neighbors; that *Bolling* has been raised in Mobile; that *Gilbert & Krebs*, the plaintiffs, were also residents of Mobile county; that the slaves were seized by a Deputy Marshal of the United States in the parish of St. John the Baptist, and brought to New Orleans by that officer.

The following are admissions made upon the trial :

" It is admitted, attachments issued in these cases from the United States Court, under order of Hon. Judge McCaleb ; that attachments were executed, and negroes taken into possession of the Marshal ; that petition was served on *A. C. Hollinger* ; that *Messrs. Marr*, as counsel for *Hollinger*, moved to have the attachments set aside on the grounds that the bonds was insufficient ; that *J. C. Bolling* had no authority as agent to sign the bonds for attachment, that the Circuit Court had no jurisdiction.

" There was annexed an affidavit of *A. B. Hollinger* to plea of jurisdiction, that he was a citizen of the State of Alabama.

" That the rule was tried before the court and submitted. A day or two afterwards the suit was discontinued.

" The court refused to try on rule any thing but the question of formality of attachment ; that the question of jurisdiction, and all other questions, were reserved for trial on the merits.

" That the Marshal had ordered his keeper to release the negroes immediately after the discontinuance ; that after the receipt of the order, before actual delivery to defendant, the negroes were seized by the Sheriff, on the attachment issued from the court."

The evidence, in our opinion, establishes that the slaves attached in these suits, were wrongfully brought within reach of the process of the Second District Court of New Orleans.

The Circuit Courts of the United States, by the Judiciary Act, sec. 11, have a jurisdiction limited to cases, where either the United States are plaintiff, or an

GILBERT
*v.*
HOLLINGER.

alien is a party, or the suit is between a citizen of the State, where the suit is brought, and a citizen of another State.

That court was, therefore, without jurisdiction of a suit brought by a citizen of Alabama against another citizen of Alabama. To give it jurisdiction, it was incorrectly alleged in plaintiff's petitions, addressed to the Circuit Court of the United States, that *Hollinger* was a citizen of Louisiana.

The process of that court ran into the parish of St. John the Baptist, where *Hollinger's* negroes were.

By means of that process, they were levied upon in that parish, and removed to New Orleans, the place where the court is held.

Once there, the suit in the United States Court is discontinued, and simultaneously process issues from the State Court, based upon the truthful allegation of *Hollinger* being a non-resident of Louisiana, but which allegation is at direct variance with the allegations made previously by the same party in the Federal Court.

Seizures of property brought about like those in the present controversy, cannot be maintained by this court. Vide *Powell* v. *McKee,* 4 An. 108; *McKee* v. *Amonett,* 6 An. 207; *Paradise* v. *Farmers' and Merchants' Bank,* 5 An. 710; *Myers* v. *Myers,* 8 An. 369.

Neither are they maintained in our sister States. Vide 4th Humpreys' Tenn. Rep. 149; 24th Wendall's N. Y. Rep. 369; 12th Pickering's Mass. Rep. 270.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, in the suits of *Charles A. Gilbert* v. *Adam C. Hollinger,* and *Joseph Krebs* v. *Adam C. Hollinger,* be reversed; that the writs of attachment issued in those suits be dissolved, and the suits be dismissed at the costs of plaintiffs and appellees in both courts. And it is lastly ordered, that the Clerk of this court certify this, the decree of this court, in each of the two causes of *Charles A. Gilbert* v. *Adam C. Hollinger,* No. 7925 of the docket of the Second District Court of New Orleans; and *Joseph Krebs* v. *Adam C. Hollinger,* No. 7927 of the docket of said court, upon the appeals severally taken from the final judgments in those cases by the defendant and by the intervenor, which appeals are docketed numbers 4735 and 4825 in this court.