STOKES, *Appellant*, v. BURNS *et al.;* PIGGOTT, *Interpleader.*

### Division One, January 28, 1896.

1. **Supreme Court Practice:** EVIDENCE: HARMLESS ERROR. The supreme court will not reverse a judgment because of the erroneous exclusion of evidence where if it had been admitted the judgment was still for the right party.

2. **Practice:** DEMURRER TO EVIDENCE. While the trial court in passing on a demurrer to the evidence should make every inference of fact in favor of the party offering the evidence which it will warrant and which the jury, with any propriety, might make, yet the case should not be submitted to the jury where the evidence merely raises a suspicion or conjecture of the truthfulness of the facts sought to be established.

3. **Fraudulent Conveyance:** EVIDENCE. The mere false statement by one for whom property has been conveyed in trust by an insolvent debtor as to the financial standing of said debtor *held* not sufficient to show that the debt secured by the deed of trust was not *bona fide.*

4. ————: ————. Where defendants obtained goods by fraud and transferred the same in trust to a bank to secure a *bona fide* indebtedness to it, and the goods so transferred were not excessive security, the mere knowledge of the bank that the goods were so obtained and that defendants intended to defraud their other creditors is not sufficient to avoid the trust deed at the instance of a creditor who did not seek to disaffirm the sale of property by him to defendants.

5. ————: ————: WAIVER. A defrauded creditor by attaching property as that of the defendant concedes it to be his, and waives, as against an interpleader claiming it, any objection to defendant's title because of fraud in its acquisition by him.

*Appeal from Clinton Circuit Court.*—HON. WILLIAM S. HERNDON, Judge.

AFFIRMED.

*Jas. P. Thomas, W. K. Amick,* and *Dowe, Johnson & Rusk* for appellant.

(1) Under the evidence introduced, the case should have been submitted to the jury. The rule is well settled that if there is any evidence tending to prove the issues, the case must go to the jury. *Groll v. Tower,* 85 Mo. 249; *Moody v. Deutsch,* 85 Mo. 237; *Baum v. Fryrear,* 85 Mo. 151. (2) It is the duty of the trial court in passing upon a demurrer to the evidence, to make every inference of fact in favor of the party offering the evidence which the evidence warrants, and which the jury, with any degree of propriety, might make. *Wilson v. Board,* 63 Mo. 137; *Noeninger v. Vogt,* 88 Mo. 589; *Rine v. Railroad,* 100 Mo. 228. (3) All cases of this character necessarily consist of two elements, the fraud of the grantor and grantee's participation therein, and evidence tending to prove either is admissible, although it has no bearing on the other. Bump on Fraud. Con. [3 Ed.], p. 582; *Holmes v. Braidwood,* 82 Mo. 610; *Clark v. Cox,* 118 Mo. 652; *Desberger v. Harrington,* 28 Mo. App. 632; *Singer v. Goldenberg,* 17 Mo. App. 549; *Kurtz v. Miller,* 26 Kan. 314; *Meyberg v. Jacobs,* 40 Mo. App. 128; *Foster v. Hall,* 12 Pick. 357; *Hopkins v. Langton,* 30 Wis. 379. (4) As to the second of said elements, that is, the participation of the grantees in the fraud of Burns & Company, all acts tending to show participation should be admitted, and collusion may be inferred from even slight circumstances. *Rupe v. Alkire,* 77 Mo. 641; *Kelsey v. Murphy,* 26 Pa. St. 78; *Hartman v. Diller,* 62 Pa. St. 37; Bump on Fraud. Con., p. 582. (5) The least degree of concert or collusion between the parties makes the acts of one the acts of all. *Souder v. Schechterly,* 91 Pa. St. 83; *McDowell v. Rissell,* 37 Pa. St. 164.

*Willard P. Hall, Vinton Pike,* and *Brown & Pratt* for respondent.

(1) The alleged fraud practiced by the defendants in procuring the property, whether against the plaintiff or the other attaching creditors, was wholly immaterial to any issue in this proceeding. *Goodall v. Stewart,* 3 So. Rep. 257; *Bach v. Trech,* 26 N. E. Rep. 1019; 1 Benjamin on Sales, p. 580, n. 19; *Com. Co. v. Railroad,* 28 S. W. Rep. 870; *Donald v. Constant,* 82 Ind. 212; *Kennedy v. Thorpe,* 51 N. Y. 174; *Adler v. Fenton,* 24 How. (U. S.) 407. (2) The property being their absolute property with all that implies, the defendants had the perfect right to transfer it in payment or security of any honest debt owed by them. (3) The debts secured by the deed of trust were honest debts. The property conveyed was not excessive. There was no collusive agreement between the grantor and the other parties to the instrument for the use of the grantors. The deed was therefore an honest deed and there was nothing to submit to the jury. (4) The president of the beneficiaries purchased the oatmeal mill at the sale under the deed of trust for the benefit of his corporations; the sale was public; the mere fact that he afterward rented the mill to the son-in-law of the defendants was no evidence of fraud or collusion on the part of the said corporations. *Clark v. Cox,* 118 Mo. 658. (5) The president and vice-president of the National Bank of St. Joseph and of the Ayr Lawn Company had no power as such officers to make representations for such corporations as to the financial standing of Burns & Company, and those representations, whether made by those officers upon the streets or elsewhere, imposed no liability upon said corporations. No suit could be maintained against them for any damage caused thereby, nor can their security for

their honest debts be taken from them on account thereof.

ROBINSON, J.—On February 12, 1892, plaintiff in this case brought suit against defendants by attachment for the recovery of $4,170.50, due for flour sold by plaintiff to defendant in car load lots shipped from Waterton, Dakota.    The first car load on December 15, 1891, and the last on February 6, 1892.    Under the writ of attachment issued in the case, the sheriff levied upon and seized certain flour as the property of defendants, being at the time in possession of Harry S. Piggott.

Said Harry S. Piggott filed his interplea claiming the property so seized, under a deed of trust executed by defendants February 10, 1892, in which he was trustee and the National Bank of St. Joseph, Missouri, and the Ayr Lawn Company were beneficiaries.

Plaintiff then filed the following answer:

"Plaintiff in his answer to the interplea, alleges that the debt named in the deed of trust was fictitious, that the deed was made by defendants with the design of defrauding, hindering, and delaying defendants' creditors, and that the interpleader and beneficiaries participated in that design; that about the same time with the making of this deed, defendants with a like design, participated in by interpleader and those represented by him, made other conveyances disposing of the balance of their property, and further charges that for about ninety days before the making of said deeds, defendants, in pursuance of a conspiracy formed by them with the other parties to said deeds, bought large quantities of merchandise from plaintiffs and others, with the purpose not to pay for the same, but to convert the same, to the use of defendants and said other parties; that the merchandise in controversy, and that purchased from plaintiffs, and much more, was converted

to their use by means of said deeds ostensibly made to secure debts owing by defendants; that large quantities of merchandise greatly in excess of that usually carried by defendants, and in excess of the legitimate demands of their business, were purchased during this time and pursuant to this design, and that in order to aid them in buying more heavily, the National Bank of St. Joseph, knowing them to be insolvent, represented that defendants were worthy of credit, that defendants were indebted to merchandise creditors at the time said deeds were made for about sixty-five thousand ($65,000) dollars on about $40,000 of which attachment suits were brought. That John E. Sibbald, who is a son-in-law of defendants and a grantee in one of said deeds, about thirty days before the making of said deeds opened up a pretended business in the line of business conducted by defendants, and by means thereof aided in disposing of the merchandise procured by said fraudulent scheme.''

Said answer further charges that defendants, in furtherance of their fraudulent scheme and to prevent detection of it, spirited away and concealed their books of account.

Interpleader Piggott then filed his reply to plaintiff's answer, denying the allegations thereof, except the execution of the deed of trust, to him, and that he took possession of the property named therein; and further replying says that the deed of trust was executed for the purpose of securing the debts therein named and that the same were honest and *bona fide*.

Under the pleading there was nothing for the interpleader to prove, the burden resting upon plaintiff to prove something alleged in his answer that would invalidate the deed of trust, and his right to the property under it in favor of the interpleader. The plaintiff so understood the situation and assumed the burden.

Although the allegations in plaintiff's answer to the interplea, that the debts secured by the deeds of trust were fictitious, they offered no testimony whatever tending to impeach them. Plaintiff's case was tried upon the theory of the existence of a conspiracy between Burns & Company and the beneficiaries in the deed of trust, whereby defendants were to buy large amounts of goods from him and others and not to pay for same and that in some way the beneficiaries of the deed of trust were to assist him in the fraud. The interpleader tried the case on the theory that the sole inquiry was the attempted fraud in the conveyance of Burns & Company to him. That the fraud on part of Burns & Company, by means of which they procured the property named in the deed of trust, was wholly immaterial as well as the question of the beneficiaries' participation therein. All the reasons assigned for the offering of testimony and all objections made thereto were upon the line above indicated, and it was upon those questions as then presented that the trial court was asked to pass, and to those questions we will confine ourselves.

Considering all the testimony introduced, together with all legitimate inferences to be drawn therefrom, under any and all theories by which his case might have been tried, we think there were not sufficient facts shown to authorize its submission to the jury.

In order to show the theory upon which plaintiff presents his case we have given a brief statement of the facts as developed by him at the trial:

Stephen J. Burns, and his wife, Martha, for several years prior to February 10, 1892, were engaged in the wholesale flour and feed business, and were running an oatmeal mill all under the firm name of "Burns & Co." and down to the time of the bringing of this suit made their deposits at the National Bank

of St. Joseph and borrowed money from it and the Ayr Lawn Company. During this time .Calvin F. Burnes was the president of the National Bank of St. Joseph, and vice-president of the Ayr Lawn Company, and a director in both institutions. C. C. Burnes was president of the Ayr Lawn· Company, and a director in both institutions.

During the fall of 1891, Burns & Company owed the Ayr Lawn Company and the bank about $26,000, as evidenced by five notes, all dated between September 7, and November 2, 1891. About the months of September or October, 1891, Calvin F. Burnes procured a statement from defendants' bookkeeper showing the condition of the firm, the bills receivable and what they owed, including all assets and· liabilities. By that statement defendant was shown to be in strained circumstances; also that they were owing to divers mercantile firms throughout the country about $25,000; that afterward and up to the time of the failure, the bank and the Ayr Lawn Company continued to loan and advance money to defendant and permitted them to overdraw at the bank until the amount reached the sum of fifty odd thousand dollars, about $20,000 more than when the statement showing defendants' financial standing was left with Calvin F. Burnes at the bank by defendant's bookkeeper; that at the time of the failure, the defendants owed to merchants for goods·purchased about $60,000; that of this indebtedness to merchants about $35,000 had been made within the past four or five months, and that defendants had bought largely in excess of the demands of their trade, and that they would buy from anyone who would give to them credit, and were constantly hurrying up merchants and mill men to send in goods faster; and that the demands of their trade did not call for such stock as they were then carrying, nor was there any business reason

apparent why defendants should have hurried up the shipment of goods to themselves in such quantity for the two or three months preceding the execution of the deed of trust; that all the accounts owing to the defendants were drawn off the day preceding the execution of the deed of trust and turned over to the bank for collections, to be applied on their notes and accounts secured by the deed of trust; that by three deeds of trust executed on the same day all of defendants' property was conveyed in trust for the use of the bank and the Ayr Lawn Company, one of which being the deed of trust to Piggott conveying the property in controversy. A second deed of trust was made on all defendants' property subject to those made for the use of the bank and Ayr Lawn Company to secure certain of their mercantile creditors. No claim is made that the amount of the security was excessive. Nor was there any evidence that the bank or the Ayr Lawn Company knew, or had any reason to suspect, that the money that they were loaning to defendants would not be used in trying to sustain their business.

These are substantially the facts of this case as shown by the plaintiff that could be said to have any material bearing on the issues involved.

Plaintiff then offered to show by a creditor of defendants who had sold goods to them in the winter just preceding the failure in February, that in a conversation with Calvin F. Burnes he represented the financial standing of Burns & Company as being good, and that on the faith of said representations he had sold the goods to defendants and that same had not been paid for; which was denied by the court, and the action of the court in so ruling is one of plaintiff's assignments of error. Plaintiff offered to prove that Burns & Company had made representations to the R. G. Dun mercantile agency as to their financial

standing; which was denied by the court, and the action of the court in so doing is also alleged as error. The court also refused to permit the bookkeeper of the defendants to state the amount of the sales as appeared on the books of defendant, for the months of October, November, and December, 1891, and February, 1892, it being first shown that defendant had spirited the books away so that they could not be produced at the trial.

If on the evidence as introduced by plaintiff, supplemented by that which he offered to introduce, the verdict was for the right party, this court will not reverse and remand the cause, even though some of the evidence tendered was admissible. For the sake of this case we will discuss it as if Calvin F. Burnes had made the statement to one or more of Burns & Company's creditors, "that he thought defendants were solvent;" that he had in a previous conversation said to the bookkeeper of defendant, "I think it doubtful if they pull through" (referring to Burns & Company); that the book of Burns & Company in showing the sales, would also show no application of the funds to the payment of their just debts, and that Burns & Company had made false statement as to their financial standing to the R. G. Dun mercantile agency.

This case was tried throughout by plaintiffs on the theory that if defendant procured by fraud the property transferred to the interpleader by the deed of trust, and that the beneficiaries in said deed, the National Bank of St. Joseph and the Ayr Lawn Company, through their officers or officer, knew of, or by any act on their part assisted in, its consummation, the deed of trust was invalidated, and the disposition and conveyance of the property therein named was fraudulent as against him, a creditor of the defendants, a proposition not true

as applied to the facts of the case in hand, where the validity of the debt secured is not questioned.

While it is the duty of the trial court, in passing upon a demurrer to the evidence, to make every inference of fact in favor of the party offering it that the evidence will warrant, and which the jury with any degree of propriety might make, yet the court is not required to submit a case where a mere conjecture or suspicion might be raised by the proof of a given state of facts on part of plaintiff or defendant. We recognize, also, the proposition in cases where a conspiracy is charged, as in this case, if any evidence is offered tending to show such, from which the jury might reasonably infer the conspiracy, that question must go to the jury; and then the acts proven against one are proof against all.

Here, what conspiracy must be shown to make those rules of practice and principles of evidence availing to plaintiff? The mere false statement as to the financial standing of a business firm of a community by the president of a bank of that same community, to a party about to sell goods to the business house, has no tendency in and of itself to show that there was at the time no honest indebtedness existing in favor of the bank against such business house, or to impeach the integrity of a conveyance by a business house to secure said bank. Conceding that the president of the beneficiary bank and Ayr Lawn Company did make the statement to a merchant about to sell to defendants goods, to the effect that he deemed defendant solvent, or words to that effect, that of itself, or in connection with any other facts that were proven, would not have a tendency to suggest that the alleged indebtedness in favor of the bank and the Ayr Lawn Company was fictitious or that the conveyance securing the same was the result of a conspiracy to defraud the general cred-

itors of defendant. If no conspiracy is shown, then the declaration and doing of Burns & Company are not permissible against interpleader here.

Again, in this case the alleged fraud on part of defendants in procuring the property, whether of plaintiff or the other attaching creditors, was wholly immaterial. The plaintiff by suing upon his account waived the fraud in the sale and treated it thereby as the property of defendants with the same power of disposition in defendants over it, as of any other property owned by them. None of the property sold by plaintiff to defendant was turned over to interpleaders for the use of the bank and the Ayr Lawn Company, nor is the indebtedness of defendants to the bank and the Ayr Lawn Company in any way disputed. Evidence was offered tending to show that the officer of the bank and Ayr Lawn Company knew at the time of the execution of the deed of trust securing this debt, of the alleged fraud on the part of defendant in procuring the property, and plaintiff offered to prove by a witness that the officers of the bank and the Ayr Lawn Company stated to him that defendants were perfectly solvent, and by another witness that one of said officers had expressed to him a doubt as to defendant's ability to pull through at a time before the statement as to defendants' solvency was made to mill men and merchants about to sell to defendants, which was denied by the court, on the ground of being irrelevant to the issues here raised, in view of the conceded facts.

If the debts secured by the deed of trust were honest debts and the property conveyed was not excessive, and no collusive agreement shown between the defendants and the bank and Ayr Lawn Company or the trustee in the deed of trust, agreeing to hold all or some part of the property for the use of the defendants the deed of trust must be maintained, and

there was nothing to submit to the jury. No proof was offered, or claim made at the trial that any part of the property conveyed by the deed of trust was, by agreement between defendant and the beneficiaries, to be held for the use of defendants, then proof of fraud on part of defendants, in procuring the property, would have no tendency to prove such a result. If the debt secured was honest, the dishonest methods of defendant in gathering to themselves the property and the knowledge of that fact by the beneficiaries, together with a knowledge of defendants' intention to defraud their other creditors in making the deed, all would not invalidate the deed or make availing to plaintiff the property thus conveyed, in this character of suit. To declare otherwise would be to say that the law will force the defendant to do in this case, for the plaintiff, what the bank and the Ayr Lawn Company can not do for themselves by contract.

The plaintiff and the bank and Ayr Lawn Company were creditors of defendants. Both knew that defendants had ill-gotten gain, both knew that defendants were actually defrauding their creditors, by the disposition of their property. The bank and the Ayr Lawn Company seek by contract and persuasion to have the property conveyed to them; the plaintiff to get it through the hands of the law. What is the difference? Both must pursue it, subject only to the right of the defrauded party or parties from whom the goods were obtained, to have the contract of sale set aside for fraud and the property restored to its rightful owner. But in this case none of the plaintiff's former property is involved, and if it was included with other property named in the deed of trust by this action they have waived their right to it, and must defend now against the interpleader on the sole grounds that defendants are the owners thereof, and the inter-

pleader is not. *Johnson–Brinkman Com. Co. v. Railroad*, 126 Mo. 344, and cases there cited.

While defrauded creditors have either of two remedies, they are not concurrent. If they approve the sale, they may attach. By disapproving, they may sue for the property back, but the two suits can not be prosecuted at one and the same time, nor can the joint results of the two suits be realized under the one remedy.

If Burns & Company had not the ownership of the property and the right to dispose of same, despite the alleged fraudulent acquisition thereof, then plaintiff would have no right by his attachment, which was levied upon the theory that defendants did own the goods; and he can not invoke the fraud (if fraud there was) against creditor Sprague, participated in by the officer or officers of the beneficiary bank and Ayr Lawn Company, to defeat the interpleader in an action wherein the interpleader claims the property by conveyance to secure debts to the bank and Ayr Lawn Company, and plaintiff asserts the ownership of property in defendants, and asks that same be held to satisfy whatever judgment he might be able to obtain on his debt.

The action of plaintiff was based upon a contract of sale, and was a confirmation of it, and a waiver of all fraud involved in it, so far as the rights of the intervening interpleader is concerned in this contest for the property. The sole inquiry, then, was as to the alleged fraudulent disposition of the property by the deed of trust to the interpleader, with the burden of its establishment on plaintiff. Having made no proof as to that fact, under the admission of pleadings the trial court properly gave its peremptory instruction in the nature of a demurrer to the evidence. The judgment is therefore affirmed. BRACE, C. J., BARCLAY and MACFARLANE, JJ., concur in the result.