# R. C. MATTHEWS, Respondent, v. BERT EBY, Appellant.

### St. Louis Court of Appeals, November 12, 1912.

1. **FRAUD AND DECEIT: Debt Fraudulently Contracted: Actionable Fraud: Implied Misrepresentations.** In order for a debt to be fraudulently contracted on the part of the debtor, he must have been guilty of some material deceptive act, word or concealment, done or suffered by him with the intent to induce the opposite party to consent to the debt, and the latter must have relied upon such false acts or manifestations of the debtor and yielded his consent to the contract on the faith thereof.

2. **ATTACHMENT: Fraud and Deceit: Debt Fraudulently Contracted: Implied Misrepresentations.** After the purchase price of chattels had been agreed upon and just before they were turned over to the buyer, he told the seller that he could not pay the purchase price then because he did not have his check book with him, and that he would send the seller a check when he got home. In an action by the seller by attachment, on the ground the debt was fraudulently contracted, it being admitted by defendant that he had no money in bank at the time of the transaction, *held*, that defendant's statement amounted to an affirmation that the money was in bank to meet the check and that it was a mere matter of his getting to his check book in order to make payment; that such affirmation was false; that it related to a material fact; that plaintiff's reliance upon it may be inferred; and that the false impression was given by defendant to induce plaintiff to consent to the debt and that plaintiff yielded his consent on the faith thereof, may be inferred; and hence it is *held*, that there was sufficient evidence to warrant a finding that the debt was fraudulently contracted so as to justify an attachment under Sec. 2294, R. S. 1909.

3. ————: **Jurisdiction: Venue.** Where an action by attachment is commenced in the county in which plaintiff resides, but in which defendant does not reside, and summons is not served on defendant in such county, the jurisdiction of the court depends upon the validity of the attachment. [See Sec. 1751, R. S. 1909.]

4. ————: ————: **Unlawful or Fraudulent Levy.** An attachment levy effected by unlawful or fraudulent means is illegal and void and confers no jurisdiction.

5. **JUSTICES' COURTS: Action: Splitting Cause of Action: Attachment.** Where the debt owing a creditor was in excess

of the jurisdiction of a justice of the peace, and, in order to give the justice a fictitious appearance of jurisdiction, he split his cause of action and brought two suits and sued out two writs of attachment in aid thereof, the levy under said writs amounted to a fraud in law.

6. ATTACHMENT: Jurisdiction: Fraudulent Levy. Where a creditor, desiring to prevent the removal from the county in which he resided of property of his debtor, temporarily there, having a single cause of action for a sum too great for the jurisdiction of a justice of the peace, split it and had the property seized on two attachments issued by a justice, and subsequently, in the absence of the debtor, dismissed said attachments and had the property seized on an attachment in a suit in the circuit court, the levy under the latter attachment, having been effected by means of the other fraudulent attachments, gave no jurisdiction.

7. APPELLATE PRACTICE: Binding Effect of Theory at Trial: Attachment. The denial of a motion to dismiss an attachment on the ground that it was obtained by means of a fraudulent levy and that the court, therefore, had no jurisdiction will be reviewed, on appeal, and the question of jurisdiction raised by it determined, where the parties and the trial court proceeded on the theory it was a proper mode of raising that question.

8. ATTACHMENT: Trial Practice: Jurisdiction: Mode of Presenting Question. In an action by attachment, whether a motion to dismiss is a proper mode of presenting the question that the court did not have jurisdiction because of the fact that the levy was effected by fraudulent means, *quaere*.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED (*with directions*).

*Marsh Arnold* and *Brown & Gallivan* for appellant.

(1) The court should have sustained defendant's motion to dismiss for want of jurisdiction, in that plaintiff wrongfully attached the mules in the justice's court. Rosencranz v. Dry Goods Co., 175 Mo. 518. (2) The court erred in overruling defendant's motion to dismiss for want of jurisdiction, in that plaintiff split his demand and brought two suits in the justice's

court, attaching the property, and states that he did so to hold it in Scott county. Capital City Bank v. Knox, 47 Mo. 333; Byle v. Jones, 79 Mo. 261; Rosencranz v. Dry Goods Co., 175 Mo. 518.

*Joe Moore* for respondent.

(1) The defendant obtained the mules in controversy by representing to the plaintiff that he had money in the bank with which to pay for them, and that the reason he did not do so was because he had left his check book at home, when, as a matter of fact, he did not have any money in the bank. This was such a fraudulent misrepresentation as will support attachment. Warner v. Kade, 15 Mo. App. 600; Ring v. Paint Co., 44 Mo. App. 111. (2) The defendant brought the property attached into Scott county; it was not brought there through any act or connivance of the plaintiff; it was within the jurisdiction of either the justice or circuit court so far as the *situs* of the subject-matter of the suit was concerned. The law provides that suits by attachment shall be brought in the county in which the property may be found. Sec. 563, R. S. 1899; Carter v. Arbuthnot, 62 Mo. 582; Huxley v. Harold, 62 Mo. 516; McGrew v. Foster, 54 Mo. 258.

CAULFIELD, J.—The appeal in this case was prosecuted to this court, but was thereafter transferred by it to the Springfield Court of Appeals under the provisions of the act of the Legislature, approved June 12, 1909. [See Laws of Missouri, 1909, p. 396; see, also, sec. 3939, R. S. 1909.] In due time the cause was disposed of by the Springfield Court of Appeals through an opinion prepared by Judge Nixon of that court, as will appear by reference to Matthews v. Eby, 149 Mo. App. 157, 129 S. W. 1016. Subsequently, the Supreme Court declared the said legislative act, which purported to authorize the transfer of cases from this

court to the Springfield Court, to be unconstitutional. The cause was thereafter transferred by the Springfield Court of Appeals to this court, on the theory that the jurisdiction of the appeal continued to reside here and the proceedings had in the Springfield Court with reference thereto were *coram non judice.*

The case has been argued and submitted here and duly considered. Upon reading the record we are satisfied with and adopt, so far as it relates to the question whether the debt sued for was fraudulently contracted, the statement of facts set forth in the opinion of the Springfield Court of Appeals above referred to, as follows:.

"This was an action brought in the circuit court of Scott county on an account in the sum of $375, and a writ of attachment was sued out in aid thereof, the ground for attachment being that the debt sued for was fraudulently contracted. This writ was levied on three mules, the subjects of this controversy. The defendant filed a plea in abatement which, among other things, denied that the debt sued for was fraudulently contracted. The verdict of the jury sustained the attachment. The defendant then answered, but upon plaintiff's motion, a part of the answer was stricken out, and defendant declining to plead further, judgment was rendered for plaintiff for the amount sued for. Defendant has appealed and insists that the attachment should not have been sustained because the evidence does not show that the debt sued for was fraudulently contracted.

"This litigation had its inception in the sale of three mules. The evidence shows that plaintiff was a dealer in mules, maintaining a mule barn in Sikeston, Scott county, Missouri. That about the 1st of April, 1908, defendant appeared at plaintiff's mule barn, and, after having examined several mules, had two hitched to a wagon and tried them and said he would take them, together with another mule he had examined.

The two mules were priced at $190 each and the separate mule at $175, making a total of $555, but plaintiff told defendant he would sell the three for $550. There is a direct conflict in the evidence as to what then occurred. Plaintiff testified that defendant went up town and then came back and caught the mules and said: 'I haven't got my check book here and I can't pay you for this now, but I will send you a check when I get home.' Plaintiff says he went up town and asked a man who was well acquainted in that country what he thought about letting the mules go on that kind of a promise and that he was told it would be perfectly safe. That plaintiff then told defendant he could take them, but to send the check at once. That he waited about two weeks and then wrote to defendant. Not receiving a reply, he wrote again, but to no avail. Plaintiff says that after about five weeks he sent Alfred Emery to the defendant; that the defendant sent back $100 with a promise to pay the balance at once; that after waiting about a week longer, he wrote again, and then defendant came from his home in New Madrid county to Sikeston and wanted to turn back the two mules which had been priced at $190 each, but plaintiff refused to take them and told defendant to get the matter settled up by the following Monday. That defendant returned on Monday and left the two mules at plaintiff's mule barn in plaintiff's absence. They met later, however, and had some words, defendant saying one of the mules was not worth $1.50. Plaintiff then offered him $150 for the mule but defendant would not take less than $165 which plaintiff refused to give because the mule had become lame and both of them had deteriorated in value. Defendant then paid him seventy-five dollars more, leaving a balance due of $375, and plaintiff prepared a note for that amount and gave it to the defendant with directions to get it signed by certain named persons so that he would have something to show for the sale.

Plaintiff states that he then saw defendant 'acting peculiar' and that defendant slipped back and got the bridle he had had on one of the two mules which he had brought to the barn, and wrapped it up in his rain coat, walked around 'back there' a while, and then went out. That plaintiff was then convinced that defendant was trying to beat him by leaving the mules there anyhow. That he went out and found that defendant had also brought the third mule to town, and he at once started attachment proceedings and secured possession of the three mules. . . . Defendant's testimony was that he did not agree to send a check at once, but that he was to take the mules home and pay. at a future date when his brother had secured some money on a loan; that nothing was said about a check; that the mules were warranted and that if they were not 'all right' defendant could return them. . . . Defendant's own evidence shows that he had no money in the bank, but was relying upon his brother to make a loan and obtain the money.''

Our learned brethren of the Springfield Court of Appeals treated the case upon the foregoing facts as if there was nothing more, by way of fraud, than the defendant's promise to send defendant a check on his arrival home and concluded that such mere promise was not such a false representation as to constitute a fraud, though it was unperformed, citing Bullock v. Wooldridge, 42 Mo. App. 356; Stocking v. Howard, 73 Mo. 25. We cannot agree that the case should be so treated. In order for a debt to be fraudulently contracted on his part, ''the debtor must have been guilty of some material deceptive act, word or concealment, done or suffered by him with the intent to induce the opposite party to consent to the debt. The opposite party must have relied upon such false acts or manifestations of the debtor, and yielded his consent to the contract on the faith thereof.'' [Finlay v. Bryson, 84 Mo. 664.] It is clear from this definition or rule

that the false representation need not be express, but may be by conduct as well as by words; and such is the law. "If one intentionally acts in such a manner as to reasonably lead another to believe in the existence of facts which do not exist, and to act on such belief to his prejudice, it is as much a fraud as if he made a positive statement as to the existence of such facts." [14 Am. & Eng. Ency. of Law (2 Ed.), p. 30.] Thus, the drawing of a check upon a bank in which the drawer has no funds, and uttering it, is a fraud. It amounts to a false affirmation that the money is there to meet it. [Peterson v. Union Natl. Bank, 91 Am. Dec. 146, 52 Pa. St. 206.] Now, in the case at bar, the purchaser (defendant) did not actually draw the check, but he used the words which were equivalent as an affirmation. He said, "I haven't got my check book here and I can't pay you now, but I will send you a check when I get home." Who can doubt that this language implied that the money was in bank to meet the check as soon as it was given? It amounted to a statement that nothing stood between the parties and immediate payment but the absence of defendant's check book; that the money was in bank and it was a mere matter of getting to the check book in order that payment might be made. If such implication was not inevitable, it was at least permissible, and was a matter for the jury. That such implied affirmation was false is clearly shown and of course defendant must have known it was false. It related to a material fact, for if the money had been in bank, payment could have been made as soon as the defendant could reach his check book, while if the contrary was true the payment, or at least the time thereof, was dependent upon the ability of defendant's brother to make a loan, which was a very uncertain matter. That plaintiff relied upon such affirmation may be inferred, for it concerns a fact of which defendant had or was supposed to have knowledge, while the plaintiff had no such

knowledge and no ready means of acquiring it. That the false impression was given by defendant with intent to induce plaintiff to consent to the debt and that plaintiff yielded his consent on the faith thereof may be inferred, for the language which created it was part of the negotiation for the sale of the mules and was followed immediately by the mules being turned over to the defendant. We are satisfied that there was sufficient evidence on which to base a finding that the debt was fraudulently contracted.

But the point is made that the judgment should be reversed by reason of the action of the circuit court in overruling defendant's motion to dismiss the cause for want of jurisdiction. The cause was instituted in the circuit court of Scott county and the jurisdiction depends upon the validity of the attachment, because the defendant resided in another county and was not served with summons in Scott county where the plaintiff resided. [Sec. 1751, R. S. 1909; Brackett v. Brackett, 61 Mo. 221.] The objection raised by the motion to dismiss is aimed at the means by which the court acquired jurisdiction through the execution of its attachment process.

The following facts were disclosed at the hearing upon the motion: On May 4, 1908, defendant resided and had the three mules in New Madrid county. The plaintiff resided and had his mule barn at Sikeston in Scott county. On that day the defendant came from New Madrid county to Sikeston in Scott county bringing with him the three mules. One, a bay mule, he drove, and the other two, the gray mules, he led. Arrived in Sikeston, he tied the bay mule at the usual hitching place, and took the two gray mules to plaintiff's mule barn, where he insisted on plaintiff taking them back as unsound. He testified that plaintiff did take them back and received a payment which finished paying for the bay mule. According to plaintiff's version, however, he refused to

consent to any such arrangement and repudiated defendant's suggestion that the amount paid—$175—paid for one mule, and insisted that that sum was to be credited on the three mules; that the transaction had been a sale of three mules for $550 which could not be divided. Plaintiff told defendant to take the mules out of his barn and take them home. But, afterwards, the plaintiff testified, he judged from the defendant's actions that he was going to try to get out of town with the bay mule, leaving the gray mules on plaintiff's hands. He determined to stop this and keep the bay mule in Scott county by means of a writ of attachment from the justice of the peace, but as the sum demanded by him, $375, exceeded the amount of the justice's jurisdiction, he split his cause of action into two parts and sued out two writs before the justice for the two parts. Under the first writ, which was issued that day, May 4, 1908, he succeeded in having the bay mule seized and held by the constable before the defendant had a chance to get it and in spite of the defendant's attempt to do so. The constable and plaintiff then took the bay mule and put it with the two gray mules in the plaintiff's barn. Under the second writ, which was sued out the next day, May 5, 1908, the plaintiff had the two gray mules levied upon. All the mules continued to be kept in plaintiff's barn. On his cross-examination plaintiff frankly admitted that he divided his cause of action because he wanted to keep defendant from getting out of town with the mule and so as to get the matter into the justice court. The two attachment suits before the justice were set down for hearing on the 14th day of May, at which time the defendant was present, but the causes were continued on account of the sickness of the plaintiff. Thereafter, and while the defendant was out of the county and the mules were still in plaintiff's barn, held under the attachment, the plaintiff, without defendant's knowledge, dismissed both suits before the

justice and immediately sued out the writ of attach-
ment in the case at bar and caused the mules to be
levied upon thereunder.  He stated on cross-examina-
tion that he had had this attachment sued out right
away after dismissing the others so that he could hold
the mules as he was afraid "they would beat me out
of them."

What is the effect of plaintiff's conduct as above
disclosed upon this proceeding?  The law is, that an
attachment levy effected by unlawful or fraudulent
means is illegal and void and confers no jurisdiction.
[Rosencranz v. Swofford Bros. Dry Goods Co., 175 Mo.
518, 75 S. W. 445; Drake on Attachment (6 Ed.), sec.
193.]  This is upon the principle that courts will not
lend their assistance to effectuate fraudulent or un-
lawful practices of suitors (Holker v. Hennessey, 141
Mo. 527, l. c. 536, 42 S. W. 1090); or, as otherwise
stated, no one should be permitted to take advantage
of his own wrong, and no lawful thing can stand on
an unlawful foundation.  [Rood on Attachments, sec.
186, citing Holker v. Hennessey, supra.]  So, where
one came into possession of goods of another in one
state fraudulently or as a trespasser and took them
into another state without the consent of the owner
in order that a writ of attachment in that state could
be levied upon them, it was held that the levy conferred
no jurisdiction and was void.  [Rosencranz v. Swof-
ford Bros. Dry Goods Co., supra; Powell v. McKee,
4 La. Ann. 108.]  A like ruling was made where a
slave was decoyed into the jurisdiction of the court
and there attached.  [Timmons v. Garrison, 4 Humph.
(Tenn.) 148.]  So it was held that if the levy be made
by means of a trespass, it is vitiated.  [ Bailey v.
Wright, 39 Mich. 96.]  Likewise, where the sheriff in
one county seized the property, pretending that he
seized it by virtue of a writ of attachment, and car-
ried it back to his own county, where he made a for-
mal levy under a writ in his possession, the levy was

held to be void. [Pomroy v. Parmlee, 9 Iowa, 140.] In some instances, the fraudulent contrivance for obtaining possession of defendant's property involves an abuse of legal process—as in the case of Gilbert v. Hollinger, 14 La. Ann. 441, where, by means of a writ of attachment issued by the United States circuit court on a false affidavit that the defendant was a citizen of the state, goods were brought into the territorial jurisdiction of the state court and there attached under the state court writ on the ground that the defendant was a non-resident of the state. The case of Byler v. Jones, 79 Mo. 261, illustrates the same principle though it does not involve a seizure of property. It was there held that the criminal process of the State cannot be used to take a person from one county to another, for the purpose of having him served with civil process in the latter county, and that courts of the county into which he was so brought could acquire no rightful jurisdiction over his person in any civil proceeding by means of such a contrivance and wrong. There are many other cases, but the foregoing are sufficient to illustrate the principle involved.

Now, in the case at bar, in order to detain the property in Scott county in order that it might be subjected to attachment process therein, the plaintiff used the writs of attachment issued by the justice of the peace. The justice had no jurisdiction, as plaintiff knew, to issue a writ to secure the sum demanded by him, so, in order to accomplish his purpose regardless of the law, plaintiff conferred upon the justice a fictitious appearance of jurisdiction by splitting his cause of action, and bringing two suits. This was an unlawful practice, a proceeding which the law never tolerates. [Robins v. Conley, 47 Mo. App. 502; note to Reynolds v. Jones, 44 C. L. J. 306; Wagner v. Jacoby, 26 Mo. 532; Laine v. Francis, 15 Mo. App. 107.] It was a fraud in law. Yet by this means, fraudulent and unlawful attachment writs were procured, the

property taken into custody and held until the defendant had left the county and was off his guard, when plaintiff dismissed the justice suits, and fearful of losing the unlawful advantage he had gained thereby, hurriedly sued out this writ and caused the property to be seized thereunder before defendant had a chance to be advised. It is clear that this proceeding is but an attempt to reap the fruits of the unlawful practice by which it was made possible, and to permit plaintiff to prevail herein would be but to lend our assistance to effectuate such unlawful practice. Under the law, it is our duty to refuse to do so, as it was the duty of the trial court. Jurisdiction cannot be unlawfully acquired as in this case.

We may add here that we have proceeded on the theory, without deciding, that the motion to dismiss was a proper mode of presenting the question of jurisdiction. We have done this because both the parties as well as the trial court proceeded on that theory and no question in that regard is raised here. That the trial court did not overrule the motion because it was an improper mode of raising the question of jurisdiction is made clear by the record, which discloses that the court struck out, on plaintiff's motion, a like plea to the jurisdiction from defendant's plea in abatement of the atttachment and from defendant's answer to the merits, the defendant duly excepting.

For the reasons above stated the judgment is reversed and the cause remanded with directions to the circuit court to set aside its order sustaining the attachment and enter an order dismissing the cause. *Reynolds, P. J.,* and *Nortoni, J.,* concur.