T. L. PILE, Respondent, THE BANK OF FLEM-
INGTON, a Corporation, Appellant.

Kansas City Court of Appeals, February 1, 1915.

1. **MONEY HAD AND RECEIVED: Action for.** Where a bank
receives money with notice that it belongs to another, and
fails to turn it over to such other on demand, the one entitled
thereto may maintain an action therefor as for money had and
received.

2. ————: **Notice: Jury Question.** Whether the money was re-
ceived with notice is a question for the jury, and their decision
thereon is final where there is substantial evidence to sup-
port the submission of such question to the jury.

3. **TRIAL PRACTICE: Amendment.** Where the petition alleged
facts which necessarily implied that the bank received the
money with notice, an amendment alleging that fact in express
terms was not a change of the cause of action and was, there-
fore, permissible.

4. **INSTRUCTIONS.** An instruction telling the jury that if the
bank knew, "or had knowledge of such facts that it could have
known" of the true ownership of the money was not erroneous.
This was not telling the jury that it was the duty of the bank
to make inquiries upon receiving the money. But if it does
do this, it was a harmless error in this case, since all the
evidence shows that the bank did know before it received the
money.

5. ————: **Modification.** A complaint of error in the modification
of an instruction will not be noticed where the record does not
disclose in what way the instruction is modified.

Appeal from Benton Circuit Court.—*Hon. C. A.
Calvird,* Judge.

AFFIRMED.

*L. Cunningham, G. C. Burnside* and *W. S. Jackson*
for appellant.

*F. M. Wilson, H. P. Lay* and *Rechow & Pufahl*
for respondent.

TRIMBLE, J.—The plaintiff sued the defendant bank for money had and received.

For a number of years prior to the event out of which this controversy arose, one, John W. Pitts, had been engaged in buying cattle and shipping them to Kansas City for sale on the market. In buying cattle he would give his check on the defendant bank, noting on the check what it was for. The bank would pay the check whether he had money on deposit to meet it or not and when the cattle were sold on the market in Kansas City the proceeds would be remitted to the defendant bank and placed to Pitts' credit.

On or about October 17, 1913, Pitts bought of the plaintiff Pile forty-six head of cattle and gave the latter a check for $1875 on the defendant bank and endorsed on the face thereof a memorandum that it was given for forty-six cattle. The sale of the cattle was for cash. There was no agreement that the check was received as absolute payment so that, until the check was paid, the title to the cattle did not pass.

Pile placed the check for collection in his local bank at Crosstimbers, Mo., and it was at once sent to the defendant bank. The cattle were shipped by Pitts to a commission firm in Kansas City, but not to the one he had formerly dealt with. When the cattle were sold on the market by this firm, the proceeds of the sale, less expenses, were, by mistake, sent to a bank at Bolivar, Mo., instead of to the defendant bank. The amount so sent aggregated $1694.21. The money for the cattle, therefore, did not return to the bank of Flemington. Pitts was already overdrawn therein for something over $800 and when the Pile check for $1875 for forty-six head of his cattle came in, or thereafter, the Bank of Flemington refused to pay it and protested it October 23, 1913. The next day the cashier, Hall, wrote a letter to the Bank of Crosstimbers saying the check was refused for want of funds but that

it was the fault of the firm in Kansas City, and that he was trying to get the returns of the check in and, if successful, they might be in a position to pay the check soon.

The moment Pile learned that payment on the Pitts check to him had been refused, he called Hall, the cashier of the defendant bank, over the telephone and asked him about the check. Hall replied they had "turned it down." Pile then asked him what had become of the proceeds of his (Pile's) cattle. Hall said the bank had not received them yet. Pile also asked Hall what commission firm in Kansas City sold the cattle. Hall, knowing that Pitts always shipped cattle to the Cooper Commission Co. for sale on the market, gave him the name of that company. As stated before, however, the cattle had not been shipped to this company, and were in fact shipped to the Crider Commission Co.

This conversation between Pile and the cashier over the telephone occurred on or about October 27th. Thereafter, about October 30th, Hall, the cashier, went to Kansas City and was met at the depot by Pitts. By him Hall was again told that the cattle were bought of Pile and the number of head bought. This was after nightfall, and the next morning they went together to the office of the Crider Commission Co. to ascertain what had become of the proceeds of the cattle. There they learned that the commission company had by mistake sent the proceeds to the Bank of Bolivar instead of to the Bank of Flemington, and that the money was in the Bolivar bank to the credit of Pitts. The commission company suggested that the mistake be corrected by transferring the funds from that bank to the proper bank by a check or draft thereon. This suggestion was adopted and a check was prepared and made payable to Hall, cashier, and delivered to him.

In this way the defendant Bank, through its cashier Hall, received the proceeds of plaintiff's cattle and did so knowing they were such proceeds, having been informed of that by both Pile and Pitts.

Hall applied these proceeds to the payment of Pitts over draft of $805.18 in the defendant bank, and to the payment of one or two small checks given by Pitts to others and this left $758.87. Shortly thereafter Pile appeared at the bank with the protested $1875 check which he had obtained from the Cross-timbers bank, and the cashier turned over to Pile the above mentioned $758.87 to apply on the $1875 due him for his cattle, although no check of any kind was delivered to Hall on the bank as authority therefor. This fact, of itself, would seem to show that Hall knew the money was the proceeds of Pile's cattle and was so told by Pitts in Kansas City as Pitts says he did, else why turn over the amount remaining thereof to Pile without a check or some other written authority from Pitts? But, however this may be, the testimony of both Pitts and Pile furnish substantial evidence of the fact that Hall knew, when he received the money that it was the proceeds of Pile's cattle and that as the check for the cattle had not been paid, the proceeds was Pile's money. Hall admits he talked with Pile over the telephone and with Pitts in Kansas City, both of which conversations occurred before he, as cashier of defendant bank, received the money, but he says they did not affirmatively tell him it was Pile's. His testimony, however, shows he thought it was Pile's money when he got it. His denial that he knew of that fact is made in such way as to show that he means to deny that he knew, *of his own knowledge,* that it was Pile's. But, even if he had denied any knowledge or notice of any kind that the money was Pile's still, as there was ample evidence tending to show that he was told and did know, the question was

for the jury to settle. As it was submitted to them and they have found for plaintiff, we must accept it as true that he did know it was Pile's money when he received it, and his knowledge was, of course, the knowledge of the bank.

The bank, therefore, having received money belonging to Pile, with knowledge at the time that it was Pile's money, and having refused to pay it over on demand, Pile is entitled to maintain an action against it for money had and received, and to recover to the extent of the amount so received and not paid over to him. [York v. Farmers Bank, 105 Mo. App. 127; Johnson-Brinkman Com. Co. v. Central Bank, 116 Mo. 558; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262; Boyd v. Bank of Mercer Co. Bank, 174 Mo. App. 431; St. Louis Sanitary Co. v. Reed, 179 Mo. App. 164; Garnett etc. Paper Co. v. Midland Pub. Co., 156 Mo. App. 187.]

There is no merit in the contention that the court erred in allowing the petition to be amended at the close of the evidence by inserting, after the allegation that the bank received the proceeds of the cattle, the words "with knowledge that the plaintiff was entitled thereto." The amendment did not change the cause of action contained in the facts pleaded in the petition as it was originally. While the petition before the amendment did not say in express words that the bank received the money with knowledge of plaintiff's ownership, yet the facts that were stated clearly showed, by necessary and unavoidable implication, that the money was received with such knowledge. The petition was a petition for money had and received as well before the amendment as after it.

Even if it should be conceded that plaintiff's instruction number one was technically erroneous because it told the jury that if the defendant bank knew

"or had knowledge of such facts that it could have known" the money it received was the proceeds of plaintiff's cattle, and knew that they had not been paid for, then it had no right to appropriate it, still such error, if any, was harmless since the check given by Pitts to plaintiff showed on its face that it was given for forty-six head of cattle and the bank's cashier admitted that he knew this. The plaintiff's check was presented to the defendant bank before the proceeds of such cattle were received by it. Consequently, the jury's verdict did not rest upon any idea that it was the duty of the bank to investigate the ownership of the money before it could apply it to Pitts' overdraft. Besides, this instruction did not tell the jury that the bank must first investigate. It merely told the jury that they could determine from all the facts and circumstances whether the bank knew or believed the money was plaintiff's. The instruction taken as a whole shows that the phrase "could have known" did not mean that the bank "could have known" of it by inquiry, but merely whether as reasonable men the bank officers must have known it from all the facts before them. All the other instructions so clearly and forcibly told the jury that the bank must have had notice from the facts before it, that it cannot be said the jury were misled by the wording of the instruction.

The same observations apply to the alleged modification of defendant's instruction number two of which complaint is made. The record does not state in what particular the instruction was modified, but if we may venture a guess that the modification consisted in inserting the words "or had knowledge of such facts that it could have known that fact" after that part of the instruction requiring plaintiff to prove by the greater weight of the evidence that the defendant bank knew the money was plaintiff's, then we

say this insertion did not tell the jury the bank must investigate with or without notice, but merely that if the facts before it were such as to give a reasonable man notice, then it had notice. However, there is no statement in the record that such was the modification complained of, and hence we ought not to reverse and remand the case upon a guess that such was the modification even if the above phrase is erroneous.

Instructions for defendant numbered one, three, four, five, six and seven, were properly refused. Numbers one and five were demurrers to the evidence while three, four and six omitted the element of the bank's knowledge of the money belonging to plaintiff. Instruction seven was not in harmony with defendant's evidence and, therefore, had no evidence upon which it could be based.

As the record shows no error justifying a reversal, the judgment is affirmed. The other judges concur.