JAMES LEONARD and JOHN LEONARD, Appellants, v. JOSEPH W. MARTIN, Defendant, SHANNON COUNTY BANK and CITIZENS' STATE BANK, Garnishees, Respondents.

**Springfield Court of Appeals, January 28, 1916.**

**GARNISHMENT: Fraudulent Transfer of Property: Debtor and Creditor.** Defendant purchased cattle from plaintiff giving in payment a check on a bank in which he had no funds, the transaction being carried out under arrangement with an agent of the bank. The cattle having been sold again, defendant gave the proceeds to the bank to apply on a pre-existing, bona-fide debt which defendant owed bank. Plaintiff may garnishee the bank for such funds, since the bank knew of and participated in the fraud.

Appeal from Webster County Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED. CERTIFIED TO SUPREME COURT. STURGIS, J., *dissenting.*

*Wm. P. Elmer, L. T. McGee* and *J. A. Watson* for appellants.

*L. R. Thomason* and *S. A. Cunningham* for respondents.

FARRINGTON, J.—This is a suit brought by the appellants against Joseph W. Martin as defendant and the Shannon County Bank and the Citizens' State Bank as garnishees.

The suit against Martin was to recover the purchase price of cattle sold and delivered to him by the plaintiffs. An attachment was issued, it being charged in the affidavit that Martin had conveyed and assigned his property so as to hinder and delay creditors, and that the debt sued for by plaintiffs was fraudulently contracted on the part of the defendant Martin, and that defendant failed to pay the price and value of seventy-five head of cattle which were sold and delivered by plaintiffs to defendant and which by contract he was bound to pay for on delivery.

The two above-named banks were garnished and in answer to interrogatories propounded to them denied having any property or effects in their possession or under their control belonging to Martin, and further denying that they owed Martin any sum whatever.

The plaintiffs in their replies to the answers of the garnishees among other grounds set up that the defendant Martin fraudulently contracted and purchased said cattle from the plaintiffs and purchased the same without any intention of paying therefor and with the intent and purpose of fraudulently transferring, assigning and delivering to the garnishees the proceeds from the sale of the cattle, and cheating, wronging and defrauding the plaintiffs out of said cattle and the proceeds thereof, and of fraudulently transferring and disposing of the proceeds of the same to the garnishees; that said garnishees induced, advised and counseled the said Martin to issue checks against said banks (the garnishees) for the purchase price of said cattle with the intent and purpose of enabling the said Martin to secure the possession of said cattle and sell the same and to pay a certain debt owing by Martin to said garnishees; that said garnishees assisted and abet-

ted the said Martin after the delivery of the cattle had been made to him in selling and disposing of the same, and received from the sale of the cattle the money paid to Martin knowing at the time that they received said money coming from the sale of the cattle that Martin had purchased them from the plaintiffs and that he had issued checks on said banks to pay the purchase price of the cattle, and that said garnishees assisted Martin in fraudulently conveying and assigning and disposing of the cattle and received the money arising from such sale and converted it to their own use with full knowledge and participated in the fraud practiced on these plaintiffs.

The court found judgment in favor of the plaintiffs against Martin and sustained the attachment on the grounds hereinbefore set out. After hearing evidence introduced by the plaintiffs tending to prove the allegations in their replies, the court directed the jury to find for the garnishees, and it is from the judgment rendered on the verdict that the plaintiffs appeal.

The question in this case narrows down to this: Do the facts which are developed under the allegations in the replies make a case where garnishment is a remedy for the alleged fraud practiced on plaintiffs by the agent of the garnishees?

The facts developed in the testimony of the plaintiffs are substantially as follows: Defendant Martin owed these two banks, the garnishees herein, something like three thousand dollars. To secure this, they had taken a chattel mortgage on some cattle which Martin was shipping to St. Louis. For some reason these cattle were quarantined at St. James, Mo., and while there Martin sold them to a person living at or near St. James without giving him any notice whatever of the chattel mortgage on the herd held by the garnishees herein. The garnishees sent one Sizemore, an attorney, to St. James, and while there Sizemore ascertained that Martin had disposed of the herd to the

St. James party and that the latter had bought them without any notice that a chattel mortgage was in existence. For some reason not disclosed in this record Sizemore did not institute proceedings to recover the herd under the mortgage, but it is shown that he remarked to the purchaser that he could get his (the banks') money out of Martin in another way. Martin and Sizemore were in St. James together, both (according to the evidence) drinking together a good deal of the time. Martin says he told Sizemore that he knew of some cattle over in Dent county that he could buy and that if he had the money to buy them there would be a profit in them which he would turn over to Sizemore for the banks which he represented; that is, that Martin told him he would turn over the profit that could be made on those cattle. Martin said he told Sizemore he did not have the money with which to buy them and that Sizemore told him to go ahead and buy those cattle and to issue his checks for the purchase price against the two banks and that he would see that these purchase price checks were paid out of the proceeds that would be derived from a sale of the cattle. Acting on this, Martin bought the cattle in Dent county and gave his checks to the plaintiffs herein for the amount for which this suit was brought.

The evidence shows that when Martin bought the cattle from the plaintiffs he represented that he was going to ship them to Pike county in this State, and he in fact had them billed by the railroad company to a point in that county.

It is shown that Sizemore, the agent and attorney of the garnished banks, met the defendant at a station on the railroad several stations below the station from which the cattle were shipped, and that the cattle were then re-billed to St. Louis, Martin and Sizemore going with them.

Sizemore stayed with the defendant Martin until the cattle were sold and Martin had received the pro-

ceeds. Sizemore got Martin to turn over to him the drafts which the commission merchants had paid Martin for the cattle and then left him and took the drafts back to the garnishees and they applied this money on their former indebtedness against Martin.

The record shows the following examination of the defendant by the court: "Q. Why was it you did not use the proceeds to send to the Shannon County Bank to meet the checks you had drawn for the cattle? A. For the simple reason that I got drunk or I would have done it. Q. Who got the money? A. Sizemore got the money."

He was asked how he expected to pay for plaintiffs' cattle and said he expected to pay the checks, given at the time of the purchase, out of the proceeds derived from the sale of the cattle and that he did not intend the proceeds from the sale of these cattle to settle up past indebtedness to the two banks, the garnishees. And from the evidence it is clear that Sizemore knew of this intention on the part of Martin; and that he had aided and assisted Martin in purchasing the cattle and in getting possession of them as was done.

From the briefs and from the oral arguments it appears that the trial court directed a verdict for the garnishees on the ground that garnishment was not a remedy open in this case to these plaintiffs. In this we think the court erred. It is well settled in this State that the issuance of checks on a bank in payment of the purchase price of property when the drawer has no funds in the bank is a fraud (Matthews v. Eby, 168 Mo. App. 134, 151 S. W. 470), and is a fraudulent act within the meaning of the attachment law. [Alexander v. Wade, 107 Mo. App. 321, 80 S. W. 917]

It is also open to a plaintiff to ratify a sale and sue for the purchase price and then attach on the ground of a fraud, and by such ratification he does not waive the fraud of the defendant in obtaining the thing sold. [Kansas City Stained Glass Works & Sign Co. v. Rob-

ertson, 73 Mo. App. 154; Mapes v. Burns, 72 Mo. App. 411.]

A creditor having a bona-fide indebtedness is not permitted under the Missouri law to enter into a scheme with his debtor to hinder and delay other creditors in the just collection of their indebtedness. In other words, the law requires that a creditor shall collect his honest debt by honest methods and will not permit him to hold that which he has applied on his bona-fide indebtedness where it has been procured through a fraud practiced by such creditor and the debtor on other creditors. [National Tube Works Co. v. Machine Co., 118 Mo. 1. c. 375, 22 S. W. 947; Kurtz v. Troll, 175 Mo. 506, 75 S. W. 386; Aull v. Gaffin, 234 Mo. 171, 136 S. W. 343.]

It is also properly held to be the law that although a fraudulent grantee may have disposed of the property acquired by him before an attachment was issued, where the facts show that he did participate in the fraud and did acquire the property, he will be held as a garnishee to account for the proceeds derived from the sale of the property which had been fraudulently transferred to him. [Epstein v. Clothing Co., 67 Mo. App. 221.]

Where fraud enters into the transaction it creates an exception to the general rule that a creditor has no greater right against a garnishee than the debtor had. [Potter v. Whitten, 170 Mo. App. 108, 155 S. W. 80, and cases cited.]

With these general principles in mind, we think the facts developed by the plaintiffs give them clearly the remedy of garnishment. The title to the cattle undoubtedly passed to Martin for the purpose of allowing plaintiffs to bring suit and to institute attachment proceedings to procure the purchase price. The drafts which were given to Martin for the cattle in St. Louis likewise became his property, having been acquired by him, according to plaintiffs' testimony, through the

advice and assistance of the agent of the garnishees, Sizemore. Sizemore therefore knew that these drafts were held by Martin for the purpose of being deposited in the garnishee banks to take care of the checks which so far as the law is concerned both Sizemore and Martin induced the plaintiffs to accept for the cattle, and whether Martin voluntarily or involuntarily turned over the proceeds derived from the sale of the cattle to Sizemore for the purpose of paying a previous indebtedness, his act would be a fraud on the plaintiffs and one concerning which the recipient of those proceeds (Sizemore) had full knowledge. Therefore, Sizemore, while he may have been only collecting for his clients a bona-fide indebtedness, did so by helping and assisting and advising Martin in acquiring and in disposing of these cattle to the injury of these plaintiffs. As the cases hereinbefore cited clearly indicate, the creditor receiving his money from a debtor must not only have a bona-fide indebtedness but his conduct and relation to the collection thereof must likewise be bona-fide. It is held in the case of Pile v. Bank of Flemington, 187 Mo. App. 61, 173 S. W. 50, where the bank undertook to charge up a cattle dealer's account out of proceeds derived from the sale of some cattle purchased from the plaintiff, that the bank, when it knew that these cattle had been purchased from plaintiff and knew that a check had been given to him on that bank to be paid out of the proceeds derived from the cattle when sold in Kansas City, with this knowledge the bank would have no right to apply that money to any other indebtedness of its customer but that it must be applied to the payment of the party selling the cattle. While it is true that in that case the plaintiff did not seek a remedy by attachment, the court holds that the bank could not convert that money to any other purpose; and we can see no reason why—if that be the case and the bank could not convert the money to its own indebtedness with a knowledge of the facts—that the

money in our case (so far as these plaintiffs are concerned) cannot be treated as yet belonging to Martin, as to which a garnishment would avail.

All the cases in Missouri to which our attention has been called have made the exception only where there has been a fraudulent *disposition* of the property of the debtor. The reason that garnishment is open to the creditor is because fraud has entered into the case; fraud furnishes the basis for the exception; and we cannot see why, where there is fraud, the remedy of garnishment would not be open to a creditor against one who has acquired property from the debtor where such party fraudulently aided and abetted the debtor in the *acquisition* of the property. That is, of course, only in cases where the party who aided and abetted, procured the property from or through the defrauding debtor.

We think the corect rule is declared in the case of Hill et al. v. Mallory, 112 Mich. 327, 70 N. W. 1016, where the Supreme Court of Michigan used this language: "In view of this evidence, it was error to leave the subject to the jury under the following instruction: 'If it is payment of an honest debt, it will be sustained by the law, even though the effect of it may defeat all other creditors in the collection of their claims, and I may say to you that it would be good in law even if that was the intention of the transfer, so long as the indebtedness that it was turned over to satisfy was an honest, bona-fide, and legal indebtedness. It would follow from this rule that if the indebtedness from Michael Hill to his sons was an honest, bona-fide, and legal indebtedness, in such amount as would be fair, just and reasonable compensation for the amount of property that he turned over to them, the transfer would be valid in law, even though it defeated Fletcher & Sons, and even though it was intended to do so.' They should have instructed that, if these purchases were made with full knowledge by the plaintiffs, and

with that assent, that the father had made false statements in regard to, or had purposely concealed, his financial condition in order to obtain the credit, or if the purchases were made for the purpose of obtaining the goods to secure plaintiffs their debts and to prevent Fletcher & Sons from securing theirs, and this was known to plaintiffs, then the sale was fraudulent.'' In that case a knowledge of the fraudulent procurement of the property by the debtor was held sufficient to stop the creditor with a bona-fide debt from taking property thus acquired in payment of an honest debt, and it was held that a taking thereof made such creditor participate in the fraud and liable to have the property so taken attached; while here we have not only evidence that Sizemore knew that Martin had procured these cattle on worthless checks but also evidence that Sizemore advised the purchase of the cattle by giving checks which he knew would be turned down when presented to the banks which he represented.

In the case of Thompson v. Furr, 57 Miss. 478, 484, the court used the following language: ''A creditor has a perfect right to protect his own interests, but in so doing he must not lend himself to any scheme whereby others may be defrauded; and he does this whenever he knowingly accepts the benefits of an arrangement by which others are deceived and misled, and the interests of the debtor thereby improperly protected from the lawful demands of his creditors.'' Although that was not a case in which the facts were identical with those of our case, the court declared a principle which we think is applicable to the facts before us.

As hereinbefore noted, in the cases of Mapes v. Burns, 72 Mo. App. 411, and Kansas City Stained Glass Works & Sign Co. v. Robertson, 73 Mo. App. 154, a creditor is not precluded from relying on the fraud to sustain an attachment where the ground is that the debt was fraudulently contracted, although he may

have affirmed the sale to the extent of suing for the purchase price. Why, then, should he be denied the right to seize in the hands of a transferee the property or its proceeds out of which he was defrauded by the very acts and conduct of the debtor and such transferee? In this case, although plaintiffs sued for the purchase price, their attachment would be upheld on the fraud and the property could have been seized and subjected to the attachment lien if it had been found in Martin's hands. In justice and reason the rule should not only extend to seizing the property in Martin's hands but should also allow this attachment by way of garnishment to be effective when the property or the proceeds from the sale thereof is found to be in the hands of his co-conspirator in the fraudulent procuring of the property.

We have kept in mind the cases holding that a creditor cannot take advantage of a defrauded debtor and that the fraudulent conveyance statute is directed against the acts of the grantor. [Parker v. Roberts, 116 Mo. 657, 22 S. W. 914; Colbern v. Robinson, 80 Mo. 541.]

And while Martin testifies that Sizemore got the drafts away from him while he was drunk in St. Louis, there is yet sufficient evidence in the record from which a jury might find that the scheme to purchase plaintiffs' cattle and not pay for them and to divert the proceeds derived from the sale of the cattle to the payment of pre-existing indebtedness due the two banks was in the minds of both Martin and Sizemore before the cattle were purchased.

Nor have we lost sight of what is said in the case of Bangs Milling Co. v. Burns, 152 Mo. 350, 53 S. W. 923, holding that creditors can only complain of fraudulent conveyances made by a debtor and not those made to him. What is said on this point in that case was purely *obiter dicta* as the court before taking up that

question first held that there was no evidence in the record to support the allegation condemned. The case was therefore properly disposed of on its merits, and what was said *arguendo* in the course of the opinion contrary to the views we entertain was wholly unnecessary to the disposition of the case, so that we do not feel bound thereby. In that opinion reference is made to Stokes v. Burns, 132 Mo. 214, 33 S. W. 460, which was a case growing out of the same transaction as the Milling Company case. On turning to the Stokes case, it will be found that the court was very careful in several places in the opinion to state that the property which the plaintiff claimed he was defrauded out of never reached the hands of the creditors under the alleged fraudulent deed of trust.

The determination of this question in this case is probably of vital importance to these plaintiffs as it is doubtful whether, having elected to proceed by attachment to a final judgment against Martin, they could now sue, as was done in Pile v. Bank of Flemington, 187 Mo. App. 61, 173 S. W. 50, for money had and received, or have an action for the damages occasioned by the fraud. [The Johnson-Brinkman Commission Co. v. Railway Co., 126 Mo. 344, 28 S. W. 870; Tower v. Compton Hill Improvement Co., 192 Mo. 379, 91 S. W. 104; see, also, chapter on Election of Remedies in 9 R. C. L. pp. 956 to 971 inclusive.]

We are therefore of the opinion that plaintiffs in justice and in law are entitled to try the issue presented in this case by a garnishment proceeding and that the trial court erred in denying them this right. The judgment as to the garnishees is reversed and the cause remanded for a new trial.

*Robertson, P. J.,* concurs in the result. *Sturgis, J.,* dissents in a separate opinion, requesting that this cause be certified to the Supreme Court, and it is accordingly so ordered.

## SEPARATE DISSENTING OPINION.

STURGIS, J.—As an original proposition, I would fully concur in the opinion filed. To my mind it seems illogical to hold that a creditor who has been defrauded of his property can affirm the sale so as to sue on the debt thereby created and take advantage of the fraud practiced on him in sustaining the attachment whereby such property is seized in the hands of such fraud practicing debtor, but cannot so seize it by attachment or its proceeds by garnishment in the hands of one who assisted such debtor in obtaining the property by fraud —that he can sue one of the tort-feazors by attachment but cannot the other. This must be due merely to the form of the action, as the party so participating in the fraud is liable in a direct proceeding having the same result. [Pile v. Bank, 187 Mo. App. 61, 173 S. W. 50.] But it seems to me that the Supreme Court, in Bangs Milling Co. v. Burns, 152 Mo. 350, 53 S. W. 923, and the Kansas City Court of Appeals in Mapes v. Burns, 72 Mo. App. 411, have held the contrary. It is there held that the participation of the garnishee in the fraudulent acquisition of the property by the attached debtor is of no moment, provided the fraudulently acquired property passes from the attached debtor to the garnishee in payment of a bona-fide debt. Deeming the majority opinion in conflict with the two cases last mentioned, I dissent, and ask that this case be certified to the Supreme Court.